# Seguin's Appeal.

1. Where a guardian, instead of investing his ward's moneys in legal investments, employs them in his own business, the ward is entitled to elect to take either interest on his capital or the profits actually earned thereby.

2. In calculating such profits, he is entitled only to such as are attributable to the employment of his capital, and not to such as are attributable to skill, industry and labor, in conducting the business.

3. The principles upon which such apportionment of profits should be made, discussed by the court below; and an allowance, in this case, of one-third the gross profits, to the partners, for services in conducting the business, approved.

4. Where a guardian puts his ward's funds into the business of his firm, with the full knowledge of his copartner, he is liable to account to his ward only for such profits as he actually received, and not for those received by his partner.

5. The Orphans' Court, upon the settlement of the account of a guardian who had used his ward's money in his firm's business, ascertained and fixed the proportion of profits subject to the ward's election, and entered a decree that the ward, by her substituted guardian, should elect whether to take such profits, or interest. The ward (having become of age), excepted to the finding as to the proportion of profits, on the ground that the same was based on erroneous principles, and declined to elect, until this question should be settled on appeal. The Orphans' Court then entered a final decree, making an election for the ward (of the most favorable alternative), dismissed her exceptions, and confirmed the adjudication.

*Held*, not to be error. The decree directing the ward to elect was not a final decree from which an appeal would lie. The ward declining to elect, the court below did not err in making the election for her, and entering a final decree. Upon appeal therefrom, and the ward failing to show that she sustained injury by said election, or error in the decree, the same was affirmed.

6. A guardian who employs his ward's funds in his own business, though the result be advantageous to the ward, will not be allowed commissions on the fund.

7. In this case the costs of the audit of the guardian's account, and a moderate counsel fee for the accountant, allowed out of the fund.

March 28th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

APPEAL from the Orphans' Court of *Philadelphia county:* Of January Term 1883, No. 277.

This was an appeal by Mary R. Séguin from a decree of said court dismissing her exceptions to, and confirming the adjudication in the matter of the account of Charles H. Reckefus,

late guardian of said Mary R. Séguin, formerly Mary R. Richardson.

At the audit, before ASHMAN, J., the following facts appeared : In February, 1865, the accountant was appointed guardian of the four minor children of J. J. Richardson, then deceased, and his partner, S. S. Scattergood, became his security in the sum of $50,000.   On April 28th 1866, he received the sum of $39,307.36, belonging to the four minors, the share of the present appellant being $9,826.84.   Prior to 1876 two of the minors, having attained full age, received their shares of the estate as ascertained by an account which the guardian filed, and which was confirmed by agreement on their part.   On March 6th 1880, the two younger minors presented a petition to the court for the appointment of the Fidelity Insurance, Trust and Safe Deposit Co. as their guardian, which was granted. In April 1880, Reckefus filed an account showing a balance of $13,691.11 due his ward, Mary R. Richardson, but showing no investment of the trust funds.   On May 25th 1880, upon the death (by suicide) of Scattergood, the partner and surety of accountant, an attachment was issued against accountant, under which he was arrested, and upon the same day he paid to the substituted guardian the balance shown to be due appellant by his account.   From 1866 until this time the principal of the fund had remained in the possession of the firm of S. S. Scattergood & Co., composed of Reckefus, the guardian, and Scattergood, his surety.   Upon this principal the accountant charged himself with interest at six per cent. with semi-annual rests, making an average yearly interest of about eight per cent. Counsel for the appellant, as a preliminary to their election between interest on the fund and the profits earned by the fund, claimed the right to a full account of the profits of the partnership during the time covered by the trust.   The question as to the jurisdiction of the Orphans' Court over the subject matter of this inquiry was waived by the accountant, who voluntarily produced the books of the firm.   The business conducted by the firm was the importation and sale of foreign fruits.   They also dealt in brimstone, sumac, and nuts.   It did not appear that the firm was ever short of cash capital; on the contrary, the books showed, during 1866, and 1877, monthly balances to their credit in bank, ranging from $5,000 to $129,000.   At the time when the balance was reduced to $5,000 the firm had loaned $100,000 to the bank.   The firm paid cash for all its purchases, and never gave or had discounted a note, except once, and then only for an insurance premium.

The auditing judge, after an analysis of the books of the firm, fixed the average capital of the firm as follows :—

[Séguin's Appeal.]

| | | |
|---|---|---:|
| Share of Samuel Scattergood | . . | $60,867 12 |
| Share of Charles II. Reckefus | . . | 56,742 19 |
| Real estate . . . | . . | 9,400 00 |
| Share of Richardson minors | . . | 33,852 84 |

Total capital . . . $160,862 15

The adjudication then proceeded as follows:

II. What constituted profits, and were any items of profits exempted from liability to the minors' estate? Under this head it was shown that out of an aggregate gain of $237,035.39, there had been earned as commissions $133,391.52. It was argued, as to the latter sum, that it was in no sense a product of capital, but represented the personal skill and labor of the partners; and that the claim of the minors, being founded upon the producing power of their capital alone, could not attach to gains which their capital had no agency in securing. It is only necessary to say of this reasoning that it was contradicted by the facts. The commissions in question were made upon about equal proportions of ordinary broker's rates and of a guaranty, and the latter was often imposed in part consideration of advancements to consignors. To give value to the guaranty capital was as truly essential as it was to the transaction of any other business of the firm. Indeed, the knowledge that the firm possessed an assured capital would be the foundation of all confidence on the part of those consignors who required security for the solvency of purchasers.

The question as to how far the partners are entitled to an allowance on the score of their personal services in the conduct of the business, arose in another shape, in connection with the credits of interest upon their respective shares. Before any profits were apportioned, interest was allowed upon the capital contributed by both partners, the average yearly amount being $6,270.61. It was contended that this sum formed part of the expenses of the business and should be regarded as compensation for the duties performed by the partners in the conduct of the partnership affairs. If the question were broached for the first time the auditing judge would hesitate before adopting the theory of the accountant. The minors were unwilling partners in a mercantile adventure in which their whole fortune was exposed to hazard. By way of compensation for the risk, if not of atonement for the wrong, the law gives them the profits which were earned by their capital. Is it entirely just that the wrong-doer shall be paid, because in the course of his wrongdoing he has added something to the fortune which the unlucky turn of a single speculation, to which he wantonly exposed it, might have destroyed?

The inquiry is not rendered easier when we remember that

the services for which he seeks to be rewarded were primarily for the enhancement of his own capital, to which object the benefit to the minors was the merest incident. It is made more difficult because it requires that a standard of compensation shall be invented, which shall be proportioned to the varying degrees of skill and industry involved in different callings. But the question has received an authoritative answer. In Robinett's Appeal, 12 Cas. 174, the English cases were reviewed, and it was held that an administratrix who had improperly embarked the funds of the estate in her own business was chargeable with that proportion only of the profits which was fairly attributable to the trust funds, and entitled to an allowance for her skill and industry. The facts of that case were not entirely parallel with those of the present. The administratrix continued the business which had been begun by the decedent in his lifetime, and she gave her whole time and attention to the work of increasing his estate. But the principle established by that case, and by the English authorities is clearly defined and is clearly applicable. There is nothing in the circumstances of the present case to warrant a departure from the measure of compensation which was adopted in Robinett's Appeal. That measure was fixed at one-third of the gross profits. It is therefore decreed that one-third of the interest and profits credited to the partners shall be allowed to them as pay for their individual services, and that the balance of both items shall constitute the sum of net profits upon which the proportion earned by the minor's capital shall be calculated.

III. The remaining question concerns the respective liabilities of the partners to the trust fund. In the case of Guillou v. Peterson, 8 Nor. 163, decided in 1879, it was held that the copartner of an executor who knew that a loan made by the latter to the firm was of trust funds, was liable to the cestui que trust. The knowledge by the deceased partner in the present case of the loan and of its source was virtually admitted by the accountant and was so clearly shown by other circumstances, that the auditing judge finds it as a fact. But he is unable to see how an effective demand upon the estate of S. S. Scattergood for its share of the minor's gains, can be made in this proceeding. That estate is not before the court, and it cannot be made a party by any proceeding which is within the power of the court to issue. The case of a trustee who withholds possession of trust property from the rightful owners, is an analogous instance, which has been decided to be beyond the jurisdiction of the Orphans' Court: Delbert's Appeal, 2 Nor. 468. The authorities in England seem to be equally explicit in declaring that the trustee is only liable to the trust estate for the profits which he has actually received : Jones v. Foxall, 15

Beav. 395 ; McDonald *v.* Richardson, 1 Giff. 89. The case of two or more tort-feasors whose liability is joint and several, and of an executor who hands over to his co-executor moneys of the estate, which are afterwards embezzled by the latter, rest upon other principles than those which must rule here. The accountant never received the profits which went to his copartner, and which at all times were beyond his control. In accepting the fruits of the guardian's investments the minors must take them as they now exist, and subject to the terms made by the guardian : Vyse *v.* Foster, 8 Law Rep. Ch. App. 309.

From the tables on a previous page, showing the average capital of the firm, the interest of the partners and of the minors, and the average profits, the proportion of the gains which may properly be claimed by the minors may be easily found. But a calculation based upon averages would not perhaps in this instance be exact. It was apparent from the statements submitted by the guardian, and which are attached as part of this adjudication, that while the balances to the credit of the partners steadily decreased after 1874, those to the credit of the two minors increased. The auditing judge is of opinion that the account of the minors should be treated similarly to that of the partners, and that its share of profits for each year should be credited as of that year, and that the balance should form a new capital for the succeeding year. Of course the net amount of their capital, excluding interest which was allowed them upon the books, must be the basis of this calculation.

Under the rulings in Pennsylvania, in which it is sufficient to cite Robinett's Appeal, supra, and Norris' Appeal, 21 P. F. S. 106, commissions to the accountant must be denied, and the credit claimed therefor in the account is disallowed.

Counsel for accountant asked for an allowance of $500 for counsel fees. This sum, as the compensation for the time and labor which were bestowed upon the case, is by no means extravagant ; but the services were rendered necessary in a great measure by the course which the accountant pursued, and were personal to himself. For professional advice and attendance at the audit, a fee of $100, of which $50 is chargeable to this minor, is allowed, and payment thereof is directed.

Counsel for the minor are directed to file the written election of the present guardians to accept the principal with interest thereon, as in the account filed, or in lieu thereof the principal with profits computed upon the principles indicated by this adjudication, and to prepare and attach a decree in accordance therewith.

And now, March 29th 1881, it is ordered and decreed that, upon payment of clerk's fees, the account be confirmed nisi.

[Séguin's Appeal.]

The following decree was subsequently entered by the auditing judge :

And now, October 14th 1882, it appearing to the court that the guardian of said minor is entitled to elect, whether to receive the funds originally received by the accountant together with interest thereon as admitted in the account to be due, or the said amount together with the profits made thereon by the accountant while the said amount remained in his hands uninvested, and that in case the guardian of said minor should elect to accept the amount in the account with interest, that the said guardian is entitled to the payment of $14,591.18, less the amount $13,691.11, already paid over by the said accountant, and that if the said guardian should elect to take the said amount together with the said profits, there is due the said guardian the sum of $13,318.46, and it appearing that this sum is less than the amount already paid over by the said accountant to the said guardian before the auditing of the account. It is, therefore, ordered and decreed that the said accountant do pay over to the guardian of said minor the sum of $900.07, which is the amount found to be due after deducting a counsel fee of $50 and the costs of this audit, or in the alternative that the said guardian pay back to the said accountant the sum of $270.65, being the excess of the amount paid by the accountant to the said guardian before the auditing of this account, over the amount found to be due said guardian upon an account of profits as set forth in the adjudication, together with a counsel fee of $50 and the costs of filing this account, and that the further costs of the account be paid by the said guardian. And further, that the said guardian be not required to make his election as to which decree he will accept, until the expiration of ten days from this date, or if exceptions are taken to this decree, until the same shall have been argued and determined in this court in banc.

To this decree Mary Richardson filed, inter alia, the following exceptions :—

3. Because the learned Judge erred in directing that an allowance for services should be made to the partners in the firm, there being no evidence of what services they rendered, or of the value of the services, if any.

4. Because the learned judge erred in holding that the measure of compensation for the partners, under the circumstances of this case, is fixed by law at one-third of the gross profits, and in directing an allowance to the partners for their individual services, of one-third of the interest and profits credited to the partners.

7. Because the learned judge erred in not directing that

[Séguin's Appeal.]

the entire profits earned by the minors' funds, while in the hands of the firm of S. S. Scattergood & Co., should be charged against Charles H. Reckefus in stating the account of profits in these proceedings.

8. Because the learned judge erred in allowing credit of the sum of $50 in each account as counsel fees.

9. Because the learned judge erred in not directing that all costs of the audit be paid by the accountant.

14. Because the learned judge erred in so far as he was of opinion that the account of profits should be stated upon the basis of average capital and average profits, during the years in which the minors' funds were in the hands of the firm.

15. Because the learned judge erred in not directing the account of profits to be stated as follows : By taking as the capital of the concern the aggregate sum of the credits of the two partners and the two minors at the beginning of the fiscal year, October 1st 1866, and dividing the profits of that year proportionately upon that basis, between the partners and the minors, after deducting from the sum carried to the credit of each for that year the amounts drawn, respectively, by the members of the firm and the minors during such year ; the amounts of interest on partnership capital credited to the partners in each year on the firm's books, to be considered as part of the profits of such year, and so on from year to year. The fiscal year ending September 30th 1880, to be considered as the last year. Any sums received by the way of rent or interest for the minors in each year, to be deducted first from the expenditures for such year of said minors. The profits on the fifty shares of bank stock to be considered as a part of the profits for the year in which it was sold, viz., 1880.

The court in banc, after argument, dismissed the said exceptions, PENROSE, J., filing the following opinion :

We are not prepared to admit that it was intended by the decision in Robinett's Appeal, 12 Casey 174, to establish a fixed rule for the compensation of trustees, who have employed the moneys of the cestui que trust in their own business. Where the profits derived have arisen exclusively from such use the trustee is entitled to no compensation whatever, and should the moneys be lost, he will be compelled to restore them with interest ; but this is the extent of his punishment so far as the civil courts are concerned, and there is no further penalty in the way of forfeiture of that which belongs to himself, whether from the use of his own property or as the product of his own labor. A trustee, for example, who with trust money buys a lottery ticket and draws a prize, or who makes by the mere rise of stocks in which he gambles, would be allowed nothing for his so-called services ; but if, being a skillful cabinet-maker, he

should, with the money, purchase rough boards and manufacture an elaborately-carved set of furniture, the cestui que trust could not claim that the price at which it sold was the result simply of the trust funds in the first instance. The cases lie between these extremes, and each must, to some extent, be governed by its own circumstances. So far as labor actually contributes to value, the price realized cannot be regarded as profits arising from the mere materials used or from the money with which they were acquired. The inquiry must always be, how far are the profits attributable to the employment of the trust funds, and this is the utmost that can be claimed to belong to the cestui que trust.

But we cannot say that the result reached by the auditing judge in the present case was one that did injustice to the wards of the accountant, because, while the compensation was arrived at by a supposed arbitrary rule, there were included as profits, in which the wards were entitled to share, amounts received for services not connected with the use of their money, or connected so remotely that it would not appear reasonable to attribute the earnings, except perhaps to a very small proportion, to such use, viz., commissions upon sales of goods of third parties without guaranty, commissions upon such sales with guaranty, profits derived from the sale of goods purchased on joint account by accountant and third persons with moneys furnished exclusively by the latter, etc., etc. Nor does it appear that the value of the good-will of the accountant's business was taken into consideration, as an element of profits in which the wards had no right to share, though from the statement exhibited at the argument it would seem that the profits during the four years preceding the use of the trust fund exceeded those of the corresponding period which followed. The business had been established for a long time. It was one requiring personal care and attention and the exercise of considerable skill and judgment; and the capital of these wards was but a small proportion of the moneys employed in it. A reasonable allowance, not for the use of the ward's money, but for the services in carrying on their own business, and not exceeding what they would have been compelled to pay had three persons been hired to do what was done by the accountant and his partners, may therefore properly be reduced from the gross earnings of the business in ascertaining the profits attributable to the mere use of capital.

There is much force in the argument that, as it was the duty of the accountant to see that all the profits arising from his ward's money inured to their benefit, he should be held accountable, not only for what he received of such profits, but also what he permitted to be taken by his partners who had knowl-

edge of the breach of trust; but the weight of authority in England seems to be against it, and no American decision to the contrary has been cited. However we may decide the questions involved, it is clear that this case will be taken to a higher court. It is now in a position for speedy review, and an authoritative determination of the principles upon which the account of profits should be taken. To send it back to the auditing judge, if we differed from him, would only involve the parties in useless expense and delay, and as it is conceded that the moneys of the wards, with interest compounded by semi-annual rests, have been paid to their present guardian, we shall follow the course sanctioned by Judge SHARSWOOD in Shelmire v. Peters, 8 Phila. 89–91, and dismiss the exceptions.

Exceptions dismissed and adjudication confirmed.

The following final decree was afterwards entered:

And now, January 11th 1883, the said ward, who became of age on the 9th day of February 1882, and who intermarried with Norcom L. Séguin on the 9th day of December 1880, having declined to elect as directed by the adjudication of the auditing judge whether she would take interest or profits arising from the use of her estate in the business of the guardian, claiming that she should not be required to make such election until the principles upon which the account of profits should be taken had been determined by the supreme court, and it appearing under the view taken by the auditing judge that the profits arising from the use of said moneys in said business were less than the interest as calculated by the accountant, and that it is to the advantage of the ward, therefore, to receive such amount rather than the amount of such profits, it is ordered, adjudged, and decreed, the election for the ward being now made by the court, that the accountant do pay to the said ward the sum of $900.07, which is the amount found to be due by the adjudication after deducting a counsel fee of $50 and the costs of the audit, and that the exceptions to said adjudication be dismissed.

The exceptant (having come of age and married Norcom L. Séguin, and having been substituted of record for her guardian), took this appeal, assigning for error, the dismissal of her several exceptions hereinbefore set forth; the confirmation of the adjudication; and also the following additional assignments of error:

6. The court below erred in holding that the ward must elect between taking interest on her money and profits made thereon by the accountant, but estimated upon erroneous rulings as to both law and facts; and upon her refusal to elect in decreeing an election for her.

7. The court below erred in not holding that the decree of

the auditing judge, entered on October 14th 1882, and confirmed by the court in banc, was a final decree, and in entering the decree of January 11th 1883.

8. The court below erred in not holding that the ward's right of election need not be exercised by her until the supreme court had disposed of her exceptions to the adjudication and the decree entered thereon on October 14th 1882.

*Francis Rawle* (*Norcom L. Séguin*, with him), for appellant.—It is true that compensation was allowed in Robinett's Appeal, but it is submitted that it was not intended to lay down any fixed rule as to the percentage of compensation ; and that in the nature of things there can be no fixed percentage : Robinett's Appeal, 12 Casey 189 ; Norris's Appeal, 21 Smith 106 ; Brown *v.* De Tastet, Jacob 284 ; Palmer *v.* Mitchell, 2 M. & K. 672, n.; Crawshay *v.* Collins, 15 Vesey 230 ; Willett *v.* Blanford, 1 Hare 253 ; Featherstonhaugh *v.* Fenwick, 17 Vesey 298 ; MacDonald *v.* Richardson, 1 Gifford 81; Jones *v.* Foxall, 15 Beavan 388 ; Laird *v.* Chisholm, 30 Scot. Jur. 582.

In deciding that our proportion of the entire profits made by the firm cannot be charged against Reckefus alone, the Orphans' Court overlooked the fact that at the time Reckefus put the trust funds into the firm his capital was $30,722.65, his partner's $95,793.71, and his interest in the profits was one-fourth : soon afterwards this was increased to one-half. We do not pretend that the court had jurisdiction over Scattergood in this proceeding, but we submit that the guardian should be presumed to have received for his ward all the profits which her money earned while exposed to the great risks of his business. In the somewhat analogous case of tort, full recovery for the entire injury can be had from any tort-feasor : Brown *v.* De Tastet, supra.

The injustice of the rule laid down in the court below will appear if we take a case of a trustee with perhaps nine partners widely separated geographically, who loans trust funds to the firm with their knowledge. All the cases admit their liability to account for the profits, and yet if the profits have been as high as twenty per cent. only two per cent. can be recovered from the offending trustee, and the owners of the fund must pursue each separate partner, perhaps in a separate forum, and away from the firm books, before he can recover the money admitted to be justly due him. As it was the duty of the accountant to see that all the profits arising from his ward's money inured to their benefit, he should be held accountable, not only for what he received of such profits, but also what he permitted to be taken by his partner, who had knowledge of the breach of trust.

[Séguin's Appeal.]

Election is an equitable doctrine, and we should be compelled to elect only when our rights will be fully protected in doing so.  Had we elected on the decree of the auditing judge it would have been in ignorance as to whether, if we preferred profits, it would have been the entire profits, or only half of them, and whether they would be profits reduced by allowance for services or not.  Obviously we could not fairly elect till these questions are settled by this court.  See Story, Eq. Jur. § 1098 ; Embry v. Palmer, 2 Sup. Ct. Rep. 25 ; U. S. v. Dashiel, 3 Wallace 688 ; Kreiser's Appeal, 19 Smith 194 ; Bradfords v. Kents, 7 Wright 474 ; Butricke v. Broadhurst, 3 Bro. C. C. 88 ; Pusey v. Desbouvrie, 3 P. Wms. 315 ; Douglas v. Douglas, L. R. 12 Eq. 617 ; Streatfield v. Streatfield, 1 Sw. 447.  The proper method of restating the account from the firm books appears in the 15th exception supra.  This method was adopted by the court in drawing the decree, although in the earlier part of the adjudication there is an intimation that the accounting should be upon the basis of the average capital of the firm.  The method pursued is taken from Brown v. De Tastet, Jacob 287.

Vyse v. Foster, relied on by the other side, does not apply, because the court below has not included as loans to the firm the shares of the other wards, as a part of the firm capital, and as the appellee has made no exceptions to this ruling, he can not object here.  The same is true of the good-will of the firm. Its value was not brought into the case, and the appellee has not brought up the question.

*Richard P. White* (*George H. Earle, Jr.*, with him), for the appellee.—The element of actual fraud, or conscious breach of trust is absent from this case.  There was perfect openness ; the account was kept on the books as guardian ; it was credited with interest compounded semi-annually ; triennial accounts were filed, showing the status of the fund ; there was no motive for impropriety, but on the contrary the guardian had the best interests of his wards at heart ; as the minors came of age (other than the appellant), their entire shares, with their large increment by compounding the interest, were paid over promptly ; and though it is true the appellant obtained an attachment, it was upon an ex parte petition, and on the same day the guardian paid over her entire share, with compound interest, as shown by the account.

It is submitted that no rule of law is more firmly established than that in all cases of the misuse of trust funds, or of fraud, legal or actual, where the right of election exists, it must be exercised by the party injured as soon as the facts come to his knowledge : Campbell v. Fleming, 1 A. & E. 42 ; Masson v.

Bovet, 1 Denio 74 ; Hammond *v.* Pennock, 61 N. Y. 153 ; Matteson *v.* Holt, 45 Vt. 336 ; Leaming *v.* Wise, 23 Smith 176 ; Bank of Oswego *v.* Burt, 14 N. Y. W. Dig. 292.   This court has repeatedly decided that it will not entertain an appeal unless from a final and definitive decree of the Orphans' Court.   How then can it be asked to entertain an appeal to settle questions of law before the suitor has made up his mind as to his claim ?

The principles upon which profits made by the use of trust moneys are ascertained and awarded, may be stated thus : Where a trustee makes a profit off the trust fund, the cestui que trust may at his election claim the profits so made, or interest at the legal rate upon the amount so invested.   When he elects to take the profits he can only claim the net result of the investment ; he cannot claim profits when profits are made and interest for the remainder of the time.   The reason of this is that he is only entitled to profits on the footing that he sanctions, approves of, and adopts the investment of the trustee as his own.   He has his option to say, all investments of the trust funds are in contemplation of law made for my benefit, and belong to me with their legitimate fruits, in which case he must take them just as they are ; or he may say, you had no right to invest the funds in that way, and I refuse to accept the investment or to ratify what you have done.   If he adopts the latter course, the trustee, not having invested according to law, must account for the principal and also for the interest which he ought to have made by a proper investment, and which the law therefore presumes he has made, and charges him with, namely, six per cent., and no more.   If the cestui que trust adopts the investment, he is bound by its terms.   He ratifies and adopts the acts of his trustee.   He simply steps into his shoes, and is entitled to nothing but what the trustee has received or would receive if the funds had been his own.   Having ratified and adopted the acts of the trustee, all questions as to the legality or propriety of such acts are laid at rest.   The trustee will then be allowed his commissions as though the investment had been a strictly legal one : Rapalje *v.* Hall, 1 Sandford's Ch. R. N. Y. 399.   When a trustee makes an illegal investment nothing can be imposed upon him by way of punishment, for, inasmuch as he would only be liable for principal and interest if he dishonestly appropriated the money to his personal use, it would be inequitable to inflict an additional penalty where he merely made an irregular, but it may be, a well-meant or even a judicious investment.

If the trustee invests the money in stocks, or other specific property, the cestui que trust can take the investments and any profits realized by their advance in value ; but if the money has been used in trade he cannot claim a proportionate share of the

[Sutton *v.* Anderson.]

whole profits of the business, but only of that part earned by capital and payable to the trustee. The profits on trade are not attributable wholly to capital. Good-will, the personal services of those conducting the business, their skill, knowledge, etc., are often much more efficient than capital. Hence the cestui que trust is only entitled to a proportionate part of that portion of the profits which appears to be due to capital after due allowance has been made for the other earning powers: Cook *v.* Collingridge, Jacob 623 ; Vyse *v.* Foster, L. R. 8 Ch. App. 309 ; Docker *v.* Somes, 2 M. & K. 672 ; Attorney General *v.* Alford, 4 De G., McN. & G. 851 ; Stroud *v.* Gwyer, 28 Beav. 143 ; Burdick *v.* Garrick, L. R. 5 Ch. App. 233 ; Baker *v.* Disbrow, 18 Hun 30 ; Kyle *v.* Barnett, 17 Ala. 306 ; Robinett's Appeal, 12 Casey 189.

The opinion of the court was delivered April 16th 1883.

PER CURIAM. We think this account was adjudicated on correct principles. The guardian was charged with that part of the profits received by him, produced by the capital invested. The cestui que trust is entitled to what the capital alone produced : but not to the superadded product of skill, industry and labor in the business in which the capital was invested.

The appellant having declined to elect whether she would take interest or profits, it was not error for the court to elect for her. Previous to such election there was no final decree. The appellant fails to show that she sustained any injury for that election.

Decree affirmed and appeal dismissed at the costs of the appellant.