Kreinson, Appellant, *v.* Commercial
National Bank et al.

Argued May 12, 1936.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, LINN, STERN and BARNES, JJ.

*F. D. Gallup,* with him *E. G. Potter* and *W. D. Gallup,* of *Gallup, Potter & Gallup,* for appellant.

*F. M. Nash,* with him *W. E. Burdick,* for appellee.

OPINION BY MR. JUSTICE LINN, June 26, 1936:

The purpose of the bill was to obtain an accounting of a partnership and a declaration of plaintiff's rights in partnership assets on the theory of a constructive trust. The learned court below thought that jurisdiction was in the orphans' court and for that reason dismissed the bill on preliminary objections under Equity Rules 48 and 49. In reviewing the record at this stage of the proceeding we must of course assume that the plaintiff will prove the facts alleged.

Jacob Kreinson and his brother Louis conducted a general store in Bradford, Pennsylvania, under the firm name of J. Kreinson & Brother. They became partners by written agreement executed in 1901 and so continued until Jacob's death in 1916. While ordinarily it would then have been the duty of Louis, as surviving partner, to liquidate the partnership, the parties had agreed otherwise by a provision in their articles that on the death of either, "the legal representatives of said partner shall continue said business with all the rights and interests of deceased partner to whose interests they shall succeed; and that the said parties will each of them on entering into this agreement, make and execute their respective wills, authorizing and empowering their executors to continue the said business as above provided, and that they will not thereafter revoke or change

such wills, so far as such power and authority is concerned. . . ."

Jacob died testate leaving a widow, Bella, who received letters testamentary. He left a son, David, beneficiary of a $2,000 trust fund. He also left a daughter, born December 28, 1910; his will was made before that date and contained no provision for after-born children; by the intestate laws, therefore, this daughter was entitled to one-third of his estate. Apparently nothing was done about the minor's interests in this property during her minority. Bella, the executrix, continued the business with Louis until January 17, 1920, when a new partnership agreement was made between Louis and Bella. It provided for the continuation of the partnership under the firm name formerly used for one year, and thereafter until either party should give three months' notice of termination. It specified the capital contribution of Louis to be $79,711.80, and of Bella, $54,955.44, and that "said contribution is made by the parties hereto hereby selling or assigning to such copartnership all their respective right, title and interest in and to the assets of the business of J. Kreinson and Brother lately conducted by Louis J. Kreinson as the surviving partner, and the balance sheet hereto attached marked Exhibit A and made a part hereof, is a statement of the assets and liabilities of the new firm this day formed for the purpose of continuing under the firm name of J. Kreinson and Brother, the business heretofore conducted by the party of the first part as the surviving partner." On the same date Louis and Bella also signed a paper in which they "certify that all matters growing out of the partnership between Jacob Kreinson and Louis J. Kreinson have been adjusted between Louis J. Kreinson as surviving partner and Bella Kreinson, as executrix of the last will and testament of Jacob Kreinson, deceased, on the basis shown in the balance sheet attached to a new partnership agreement of this date between Louis J. Kreinson as party of the first part, and Bella Kreinson

in her own right and as executrix of the last will and testament of Jacob Kreinson, deceased, which shall be taken and considered as full accounting of all matters growing out of the partnership between Jacob Kreinson, now deceased, and Louis J. Kreinson, as surviving partner and that no further accounting of any kind or description need be made by the parties hereto."

Louis and Bella both knew of the minor's interest in Jacob's property taken into and used by the partnership, and became constructive trustees holding that interest for the minor. The partnership continued until the death of Louis, January 3, 1934. He died testate appointing as his executrix, Rose Kreinson, who received letters testamentary. She is one of the two defendants. Twenty-four days later Bella died, testate; letters testamentary were issued to Commercial National Bank of Bradford. It is the other defendant. Bella had married a second time and by her will left one-third of her estate to her husband, E. L. Schwalb, one-third to her son, David, and one-third to the plaintiff.

The bill was filed April 12, 1934, against the personal representatives of the two partners as has been stated. It avers that the Commercial National Bank as the executor of Bella, the surviving partner, is winding up the partnership business, has closed the stores, has converted a large part of the assets, is engaged in collecting the balance and has approximately $65,000 in cash on hand. How much of that sum is payable to partnership creditors and others entitled does not appear. Under plaintiff's averments Louis and Bella were jointly and severally liable as constructive trustees.[1] She has been unjustly deprived of her property by them. They were not entitled to withhold it from her and use it as their own.[2] She is entitled to an accounting from their per-

---

[1] See *Restatement, Restitution and Unjust Enrichment, Proposed Final Draft,* part 2, page 9 et seq., part 1, section 128, comment C.

[2] Cf. sections 13, 14 and 15 of Uniform Partnership Act of 1915, P. L. 18, 59 PS sections 35, 36 and 37.

sonal representatives: *Guillou v. Peterson,* 89 Pa. 163; *Moore v. Trainer,* 252 Pa. 367, 97 A. 462.[3] She avers that until a partnership accounting is had she cannot be informed of the facts of which she should have knowledge for the purpose of enabling her to elect whether to claim the amount of her property invested with interest or with a share of the profits. See *Robinett's App.,* 36 Pa. 174, 188; *Brown's App.,* 89 Pa. 139, 147; *Seguin's App.,* 103 Pa. 139; *Eisenlohr's Est. (No. 1),* 258 Pa. 431, 435, 102 A. 115; *Froess v. Froess,* 284 Pa. 369, 375, 131 A. 276. She is entitled to have that information; if the wrongdoer could withhold it, the choice would have no value.

The bill shows a case essentially within the equity jurisdiction. It is well settled that the orphans' court has not jurisdiction of partnership accounting: *Ainey's App.,* 2 Pennypacker 192, 11 W. N. C. 568, in which the contest was (as may also result from the dissolution of Kreinson and Brother) between the estates of the two deceased partners: *Miller's Est.,* 136 Pa. 349, 20 A. 565; *Weigley v. Coffman,* 144 Pa. 489, 22 A. 919; *Grollman's Est. (No. 1),* 273 Pa. 559, 563, 117 A. 348; *Cunningham's Est.,* 75 Pa. Superior Ct. 190. The apparent exceptions, as, for example, where the point was waived *(Seguin's App.,* 103 Pa. 139, 140) or where the surviving partner, as accountant, voluntarily brought into his account for distribution the value of the partnership interest *(Price's Est.,* 81 Pa. 263; *Maloney's Est.,* 233 Pa. 614, 82 A. 958) are not in point.

Order reversed, record remitted for further proceedings, costs to abide the event.

---

[3] Appellant cites *Russell v. McCall,* 141 N. Y. 437, 36 N. E. 498; *Penn v. Fogler,* 182 Ill. 76, 55 N. E. 192.