## Spivak *v.* Bronstein, Appellant.

Argued Jánuary 11, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Ivan Michaelson Czap,* with him *Henry W. Balka,* for appellant.

*Edward Stone,* with him *Shapiro, Rosenfeld & Stalberg,* for appellee.

OPINION BY MR. JUSTICE LADNER, March 19, 1951:

The plaintiff, Anne Spivak, is the widow and administratrix of Jacob Spivak who died intestate April 26, 1943, leaving to survive him, the plaintiff and one child, then about 2½ years of age. At the time of his death Jacob Spivak was the partner of the defendant Jules Bronstein in a taproom and restaurant business. The partnership agreement contained no provision governing dissolution in case of death, but the administratrix without consent or approval of the Orphans' Court, entered into a new partnership agreement with the defendant on May 20, 1943. That agreement recited that Anne Spivak executed it "on her own behalf, and as administrator (sic) of the Estate of Jacob Spivak, and as Guardian of the minor heir, Allen Spivak." In fact she was not then and never was guardian of her son. The agreement further recited that it was desirous to carry on the said business for the benefit of the *heirs* of said decedent and the surviving partner. The decedent's interest was valued therein at $4000. According to its terms Bronstein was required to conduct the business, pay the plaintiff $40 a week and was to retain for himself the balance of profits. It also gave the defendant an option to purchase the interest of the plaintiff at an agreed valuation or at a valuation to be fixed by three appraisers to be selected as therein specified.

The new partnership conducted the business until August 28, 1946, when it was terminated by a written agreement by which plaintiff, "individually and as Ad-

ministratrix of the Estate of Jacob Spivak," sold *her* interest in the business (recited to be one half) to defendant for $8,500, reserving any right which she might have to an accounting for the profits from the date of the death of Jacob Spivak (April 26, 1943) to the date of this agreement (i.e., August 28, 1946).

On September 21, 1946, plaintiff, as administratrix, filed her bill in equity for an accounting against defendant, Jules Bronstein, and his wife. The bill after reciting the facts substantially as hereinbefore set forth, averred, inter alia, that her share of the profits were grossly in excess of the $40 a week paid her; that defendant Bronstein had fraudulently induced her to sell her interest to him by misrepresenting that he could not secure a renewal of the lease for the premises in which the business was carried on and would have to vacate the same. The bill prayed for an accounting and other relief.

After answer and issue, the cause came on for a hearing and the chancellor filed his adjudication in which he found the allegations of the bill as to fraud and mismanagement were not sustained and that under the agreements made by her she was not entitled *individually* to any accounting. He further found, however, that the rights of the minor for whom she purported to act as guardian, (but in fact was not the guardian) were not affected by her unauthorized acts. He concluded therefore that the administratrix was without authority to invest the minor son's share of his father's estate in a partnership with the surviving partner, that the minor was not barred by his mother's action from recovering any profits attributable to his one-quarter interest in the assets of the original partnership which she had permitted to remain in the new partnership. So far as her individual share (the other $\frac{1}{4}$ interest) was concerned, the chancellor held she was

bound individually by her agreements. The bill was dismissed so far as Bronstein's wife was concerned.

Thereafter in due course a final decree was entered directing the defendant Jules Bronstein to render an account to plaintiff showing the value of interest of Jacob Spivak deceased, as of the date of his death, April 26, 1943, and of the profits derived from operation of the business since that date. The defendant was further ordered to pay the sum shown by such accounting which represented the share of the minor son together with profits attributable to the retention of that share in the business or interest at 6% in lieu of profits. But the defendant was allowed credit for one-half of the $40 weekly payments which were made pursuant to the agreement of May 20, 1943, one-half of the purchase price of the partnership business paid pursuant to the agreement of August 28, 1946, and any payments made out of the profits of the partnership to Anne Spivak in excess of the requirements of the 1943 agreement.

Thereafter, an assessor was appointed by the court pursuant to Equity Rule 65 to state the account. The court approved the assessor's report and found the sum due by the defendant pursuant to decree to be $8,267.64 which, with interest at 6% from August 28, 1946, viz., $1,777.54, made a total of $10,045.81, for which judgment was entered by decree of March 28, 1950. From this decree the defendant Bronstein prosecutes this appeal.

Counsel for appellant argues that since there was no finding of fraud or overreaching on the part of Bronstein and the new partnership agreement entered into with the administratrix was fair and equitable, and resulted in no loss to the estate, the minor was bound by it equally with his mother. We do not agree. The agreement was with a fiduciary whose limitations to enter into such a contract defendant was bound to

know. Personal representatives may not carry on the business of a decedent unless authorized by a will or by the court, and when they do so, directly or in the guise of a new partnership, the gain, if any, belongs to the estate and the loss, if any, falls on them: *Moran's Estate*, 261 Pa. 269, 104 A. 585 (1918). Defendant should have known that without approval of the court, the contract he entered into with the plaintiff afforded him no protection against anyone beneficially interested in the estate whether as creditor of the estate or as heir who had not consented to it. So also he was bound to know that the minor son of his deceased partner (whose share he admitted to be ¼ of the whole) could act only through his lawfully appointed guardian. He was bound to know also that the mother could not under the law have been appointed guardian because of incapacity both as parent (Fiduciaries Act of 1917, Sec. 59(d), 20 P.S. Ch. 3, App. 1024) and as administratrix (id. Sec. 59(c), 20 P.S. Ch. 3, App. 1023).

Having participated therefore in the unlawful act of the administratrix in hazarding the assets of her decedent in the business, the defendant cannot now plead innocence of liability to account for the full earnings to which the share of the minor is entitled. We hold, therefore, the learned chancellor was entirely correct in so ruling, and he is amply sustained in principle by the authorities he cites, viz., *Kreinson v. Commercial Nat. Bk.*, 323 Pa. 332, 185 A. 756 (1936); *Abbott's v. Reeves*, 49 Pa. 494 (1865); *Steele v. Leopold*, 135 N. Y. Div. 247, 120 N. Y. S. 569. The situation here is one for the application of the rule as it appears in the Restatement of the Law of Trusts, Sec. 288, viz., "If the trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee does not hold the

property free of the trust, although he paid value for the transfer." *Cameron, Sec. of Banking v. Peoples Bank,* 297 Pa. 551, 147 A. 657 (1929); *Custis v. Serrill,* 303 Pa. 267, 154 A. 487 (1931). The unauthorized conduct of a business by a personal representative has been recognized to be a breach of trust whether it be a continuance of decedent's sole business or one in which he had been a partner: 21 Amer. Jur. pp. 518, 525.

The learned counsel for the appellant argues that the only duty which the defendant, Bronstein, was under, was to settle the partnership accounts as surviving partner and pay the sum ascertained to be due over to the administratrix. Therefore, all he should be held liable for is the value of the decedent's interest at the time of his death. But the surviving partner did not do this and until he did, in the absence of a provision in the original partnership agreement to the contrary, his liability continued under the Uniform Partnership Act of 1915, Secs. 42, 43, 59 P.S. 104, 105: (see *Froess v. Froess,* 284 Pa. 369, 373, 131 A. 276 (1925). His duty was to account as trustee to the personal representative of his deceased partner for the value of the deceased's interest and until that was done and settlement made, the personal representative had the option to claim either the profits attributable to the decedent's interest or legal interest. Here she relieved him of that obligation by entering into the new partnership agreement so far as she was able, that is *individually,* but she could not relieve him as to those she represented in a fiduciary capacity without approval of the Orphans' Court.

The surviving partner did not choose to follow the customary course. Instead he entered into a new agreement of partnership with the administratrix which recited its intent "to carry on said business for the bene-

fit of the heirs of said decedent and surviving partner."
As heir, Mrs. Spivak was, of course, bound by her
agreement and the court below so found, but in her
representative capacity of fiduciary representing pos-
sible creditors of the estate and as guardian (which
she was not), she was utterly without authority to risk
the assets of the estate and certainly not the share of
the minor in what was virtually a continuation of the
business. Cf. *Komara's Estate,* 311 Pa. 135, 166 A. 577
(1933); *Brill v. Brill,* 282 Pa. 276, 127 A. 840 (1925).

At the argument we were somewhat concerned as
to whether a proper accounting had ever been filed by
the administratrix and whether a proper guardian had
ever been appointed to protect the minor's interest. We
find, however, from an inspection of the Orphans'
Court records that a guardian was appointed and qual-
ified (No. 3544 O. C. Phila. County) Dec. 20, 1949,
and an account has been filed by the administratrix
(Estate of Jacob Spivak, Dec'd, No. 3665 of 1949) in
which the administratrix accounted for what she had
received and showing discharge of the estate's indebt-
edness. The account also recites these proceedings as
then pending before the assessor appointed by the
court below. In his adjudication the auditing judge
(Judge KLEIN) noted that the sum so to be ascertained
would probably be ordered to be paid directly to the
guardian of the minor, but if not leave was granted
administratrix to make the necessary assignment. In
view of this disposition by the Orphans' Court we think
it unnecessary to modify the final decree of the court
below which awarded the amount found due the minor
to the administratrix. When collected, she will pursu-
ant to leave already granted by the Orphans' Court as-
sign the same to the guardian less, of course, any un-
paid transfer inheritance tax that may be found to be
due thereon.

In conclusion it may be said that all the cases cited by the learned counsel for the appellant are so different in their respective facts as not to be controlling.

Decree affirmed at costs of appellant.