Amy C. MELLOTT, Paul C. Mellott, and Forrest R. Mellott, a minor, and Kay Virginia Mellott, a minor, by their guardian, The Valley National Bank of Chambersburg

v.

UNITED STATES of America.

Civ. A. No. 20070.

United States District Court
E. D. Pennsylvania.

Sept. 12, 1957.

**254**

Henry D. O'Connor, Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Philadelphia, Pa., for defendant.

GANEY, District Judge.

This case is before us on plaintiffs' motion and defendant's counter motion for summary judgment in an action to recover allegedly overpaid income taxes for the year 1949. Broadly stated, the issue presented is whether the heirs of an estate may amend their 1949 individual income tax returns so as to reduce their taxable income by taking advantage of a "carry-back" of the "net operating loss" sustained by the estate in its fiscal period immediately following the one in which the net income of the estate became distributable to the heirs.

Prior to his death, Herman B. Mellott, a road contractor and strip-coal mine operator, lived in Pennsylvania. He died intestate on July 16, 1948. He left surviving him a widow and three children, who inherited his estate. As administrators of Herman B. Mellott's estate, the widow and son continued to "operate" the estate pending final distribution of its assets.

██ In September of 1949, the administrators, on behalf of the estate, filed a fiduciary income tax return on the cash basis for the period beginning with the date of decedent's death and ending June 30, 1949. The return reported a gross income of $558,557.19 and deductions for business expenses of $526,733.37. The net profit was the difference between these two amounts or $31,823.82. To this amount was added $14,306.42 representing capital gains which gave an "adjusted gross income" of $46,130.24. Since the administrators had not been authorized either by will or by the state court to conduct the business of the estate or to accumulate its income,[1] the entire amount of the $46,130.24 was currently distributable to the heirs of the deceased in proportion to their share of the estate under the Pennsylvania Intestate Law, 20 P.S. § 1.1 et seq.[2] And since § 162(b), as amended by the Revenue Act of 1942, § 170 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 162(b), 170, estates are allowed, as an additional deduction, the amount distributable to the heirs of

---

1. Under Pennsylvania law, personal representatives may not carry on the business of a decedent unless authorized by a will or by court. See Spivak v. Bronstein, 1951, 367 Pa. 70, 75, 79 A.2d 205; Jurkowitz v. Jurkowitz, C.P.Lack.Co., 44 Lack.Jur., Pa., 266.

2. The $46,130.24 was currently distributable to the heirs as follows: Widow, $15,-376.73 or one-third, and the three children, $10,251.17 or two-ninths each. Actually only $31,823.82 was distributed to them on December 31, 1949. This latter sum was equal to the net profit, exclusive of capital gains, of the estate for the fiscal period immediately following the decedent's death.

the estate, whether or not the amount is actually distributed to them, the estate had no taxable income and, therefore, paid no income tax.

In 1950 each of the heirs filed an individual income tax return for the calendar year 1949, and included under income the amount which was distributable to him or her from the estate in that year. Later in 1950, a fiduciary income tax return for the fiscal year ending June 30, 1950, was filed on behalf of the estate by the administrators, and a net operating loss of $33,994.92 was reported. The administrators did not amend the prior fiduciary income tax return to include the carry-back of the net operating loss, for no advantage to the estate would be gained by their doing so. Instead, each of the heirs, in proportion to his or her share of the estate under the Pennsylvania Intestate Law, claimed a part of the net operating loss,[3] recomputed his or her 1949 return to reflect this loss and filed timely claims for refunds. Since the Commissioner of Internal Revenue did not honor these claims, the heirs joined in the action here involved to obtain refunds of the difference between the taxes paid and the amounts which they claim they owe after the recomputation.

■ For the fiscal periods involved, an estate was entitled to deduct from its gross income those deductions allowed by § 23 of the Internal Revenue Code of 1939, 26 U.S.C. § 23. Subdivision (s) of that section allowed "the net operating loss deduction computed under section 122." Section 170 provided in part: "The benefit of the deduction for net operating losses allowed by section 23(s) shall be allowed to estates * * * under regulations prescribed by the Commissioner with the approval of the Secretary * * *." Section 122(b) (1) (A) provided: "If * * * the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years * * *." It is clear from this last section that only the taxpayer sustaining the "net operating loss" is to take advantage of the carry-back. In the case before us, the "taxpayer" sustaining the net operating loss is the estate and not the heirs. See Anderson v. Wilson, 1933, 289 U.S. 20, 26–27, 53 S.Ct. 417, 77 L.Ed. 1004. Nevertheless the heirs maintain that they are in effect the estate. From this position they argue that Congress must have intended that they be permitted to take advantage of the carry-back provision.

■ A great obstacle which confronts the heirs is that there was no provision in the 1939 Code, as amended, which would have allowed them to benefit from the carry-back. And the rule is that unless a taxpayer can point to a provision in the law allowing him to make a certain deduction, he will not be permitted to make it. Woolford Realty Co. v. Rose, 1932, 286 U.S. 319, 326, 52 S.Ct. 568, 76 L.Ed. 1128; New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Deputy v. Du Pont, 1940, 308 U.S. 488, 493–494, 60 S.Ct. 363, 84 L.Ed. 416. Hence the deduction for the carry-back of the net operating loss sustained by the estate in the fiscal year immediately following June 30, 1949, was not available to the heirs for the purpose of reducing their taxable income. Kearney v. United States, D.C. S.D.N.Y.1953, 116 F.Supp. 922; Sargent v. United States, 55–1 U.S.T.C. Par. 9424 (S.D.Cal.1955); 5 Merten's Law of Federal Income Taxation (1956 Ed.) § 29.10.

We have found no appellate court decision involving an issue similar to the one confronting us. However, it seems that the legislative history of the income tax law supports the position taken in the Kearney and Sargent cases. The "net loss" provision was introduced into the income tax law by § 204 of the Revenue Act of 1918, 40 Stat. 1057, and § 204 of the Revenue Act of 1921, 42 Stat. 227. These Acts permitted the beneficiaries of an estate to benefit from such losses. A change was made by §

3. The widow claimed $11,331.64 worth, and the children $7,554.43 each.

206 of the Revenue Act of 1924, 43 Stat. 253, 26 U.S.C.A.Int.Rev.Acts, page 10, so that the net loss provision resembled § 170 of the Internal Revenue Code of 1939. This change was explained by the Senate Committee on Finance as follows: "Section 206(h): This subdivision corresponds to § 204(c) of the existing law. The existing law, however, grants the benefits of the net-loss section to the beneficiary of an estate * * *. The bill confines the benefits to an estate * * * because the beneficiary's capital is not affected by a net loss of the estate * * * and consequently he should not be entitled to a net loss in computing income for the subsequent year. If the benefit of the section is extended to the estate * * * itself, proper relief is given." S.Rep. No. 398, 68th Cong., 1st Sess., p. 21.

The net loss provision was eliminated by § 218(a) of the National Industrial Act of 1933, 48 Stat. 195. See Miller v. Commissioner of Internal Revenue, 9 Cir., 1940, 115 F.2d 479. When it was restored to the income tax law by § 211 of the Revenue Act of 1939, 53 Stat. 862, its benefit was again extended to the estate, but not to the beneficiaries. Subsequent to the Internal Revenue Code of 1954, upon termination of an estate, the beneficiaries may use as a deduction on their individual income tax returns the unused net operating loss or capital loss carry-over and the excess deductions for the last taxable year of the estate. § 642(h), 26 U.S.C.A. § 642(h). Before the 1954 Code became law, a proposed § 642(h) provision was changed to make it clear "that the excess of deductions over gross income of the estate * * * to be allowed to the succeeding beneficiaries is only the excess for the last taxable years, i. e., the year of termination, of the estate * * *." H. Conference Rep. No. 2543, 83rd Cong., 2nd Sess., p. 54, 3 U.S.C.Cong. & Adm.News 1954, p. 5314. Prior to the 1954 Code, the unused carry-overs and the excess deductions were wasted when the estate terminated. S.Rep.No. 1622, 83rd Cong., 2nd Sess.,

p. 83, 3 U.S.C.Cong. & Adm.News 1954, p. 4715.

Accordingly, plaintiffs' motion for summary judgment will be denied, and defendant's similar motion will be allowed.