## Steel's Estate

56

*George A. Maene,* of *Montgomery & McCracken,* for accountants.

*William C. Ferguson, Jr.,* p. p., guardian and trustee ad litem.

VAN DUSEN, P. J., March 29, 1938.—[The trust was for testator's children for life, the issue of any children who may die to receive the share of income of the parent, and upon the death of all the children the principal was to be divided among their issue by representation, and in default of issue among the children of brothers. It was found that the trustees had made certain investments which were not within the power of investment in the will. The adult life tenants approved these investments and received the income from them and agreed to indemnify the trustees against liability with respect to them. The remaindermen were the issue of these persons, and those who were living were minors, and there was a possibility that others might be born. The trustees were a trust company and an individual, and the account was filed because of the death of the individual. It was determined that there must be a surcharge for these investments.] . . .

William C. Ferguson, Jr., was appointed trustee ad litem for unborn grandchildren; also, for unborn issue of grandchildren. In his brief, which is attached hereto, he demonstrates that the remaindermen are the grandchildren, and not their issue, and that therefore he, as

representative of their possible issue, has no standing to object to the account. This conclusion has a bearing upon the manner in which the surcharge should be handled.

He was also appointed guardian ad litem for minor issue of brothers' children, and trustee ad litem for the unborn issue of the same. In his brief he also demonstrates that the persons entitled under paragraph (*m*) of the will, in case all testator's children die without issue, are the children of brothers only, and not their issue. The brothers are dead, and their children, who are adults, make no objection to the account.

This leaves the guardian and trustee ad litem speaking only for the minor grandchildren and the possible unborn grandchildren. The purpose of appointing such an officer is to keep the judge judicial, and to put the burden of investigation and claim on someone else. The guardian's duty is to be a reasonable litigant, asserting only what is arguable. Only if the judge thinks that he is clearly taking the wrong position should there be interference, and then the remedy is to appoint someone else. I say this only to show it is not my official duty to approve or disapprove the conclusion, but only to say that it appears to me very far from clearly wrong. Mr. Ferguson has done his duty thoroughly and with good judgment, and has presented his views clearly, and I personally agree with his conclusions on these points for the reasons he gives (except paragraphs second and fourth, pp. 27 and 28 of his report). Whether these conclusions will control distribution when it comes, is another question.

The next question is, how far back can we go in correcting the deviations of the trustees from their authority? A trustees' account was audited in 1924. At that time a guardian ad litem appeared for minors in being, but there was no trustee for persons not in being. No objection was made to the account. It is conceded that the persons so represented are barred by that adjudication. No other descendants of the testator have been born meanwhile. His living children are daughters, and the

youngest is 54. Practically, the possibility of other grandchildren is nothing.

The guardian further concedes that the 1924 adjudication bars persons not in being (though they were not represented) from objecting to the purchase and retention up to that time of items not within the authority of the will. He also concedes that the adjudication justifies the trustees in retaining these items to the present time, so far as the minors represented are concerned, but not for the parties not in being. I see no difference.

At the audit of an account in the orphans' court, whether executor's or trustee's, a guardian ad litem for minors or a trustee ad litem for unborn persons is not a *necessary* party. The appointment is made in the interest of good administration. It is still unusual, in fact, extremely rare, to appoint such officers upon the audit of an executor's or administrator's account, and there is no difference in principle between an executor's and a trustee's account in this respect. It is sometimes deliberately omitted where there are others who have like interest with the minors and who are represented. (See 30 Illinois Law Review 580.) The judgment is quasi in rem, that is to say, it is so far in rem that the order of confirmation and distribution is conclusive upon all the world, if the statutory notice by advertising has been given, whether that notice reaches the party or not, and it is conclusive upon minors and unborn persons whether they are represented or not: Fiduciaries Act of June 7, 1917, P. L. 447, sec. 46 (*d*).

I am aware of section 59 (*k*) of the Fiduciaries Act as amended by the Act of May 6, 1931, P. L. 98, 99:

"In all cases in which proceedings may be had in any orphans' court affecting the interest of a minor, notice of such proceedings shall be given to the guardian of such minor in the same manner as is provided by law in the case of persons of full age. If such minor has no guardian appointed by an orphans' court of this Commonwealth, or by will probated within this Commonwealth, the

orphans' court in which such proceedings shall be pending shall appoint a guardian ad litem for such minor, in the same manner as is provided by this act in the case of ordinary applications for the appointment of guardians. If such minor or his next friend shall fail or refuse to apply for the appointment of a guardian ad litem, as aforesaid, then such guardian shall be appointed by said court on petition filed by any person interested in such proceedings, or the court may appoint a guardian ad litem without petition. Notice shall be served, as aforesaid, upon such guardian ad litem whenever notice shall be requisite."

I am also aware of the decision in Komara's Estates, 311 Pa. 135, and note the citation in the opinion of the above section of the Fiduciaries Act and the vigor with which the word "shall" is emphasized.

In that case an executor's account had been audited, and an award had been made to a minor. Later the executor appeared with a petition saying that the minor had no guardian and asking for the appointment of a guardian and asking further for authority to deliver stock instead of cash. The guardian was appointed and the authority given without any appearance for the minor. It soon turned out that the stock was worthless at the time the decree was signed.

Now this was not a proceeding quasi in rem. The audit was over, and the petition was in the nature of a personal proceeding between the executor and the minor, if it could be called anything at all resembling due process of law. The failure to have the minor's interest represented made the decree void.

I regard section 59 (*k*) when applied to the audit of accounts as directory rather than mandatory, as an admonition to the judge. The statute does not provide that a decree of confirmation shall be void if the minors who are concerned are not represented. If that were so, then there are thousands and thousands of adjudications in our files which are not good.

However, the case of McGrew's Appeal, 14 S. & R. 396, cited in the Komara case, did concern the confirmation of an executor's account and it held that confirmation was not conclusive as to minors not represented. Though the opinion of the Supreme Court states that that decision has been faithfully followed ever since, I cannot find that it has been cited on this point. Indeed I can find very little in the books on this whole subject.

The other view is expressed in Elliott v. Elliott, 5 Binn. 1, which concerned a partition. Tilghman, C. J., said:

"If there are infants concerned, it should be so stated, in order that the court may appoint guardians to take charge of their interests. But the counsel for the appellant went too far in contending, that the proceedings were *void* for want of a guardian. That is a position too broad for this Court to adopt, unless it could be shown that it rests on some positive injunction of law; because it would shake the foundation of many estates. A petition to the Orphan's Court for a valuation, is not like an adversary suit at common law, where an infant defendant must appear by guardian, or it is error."

This conclusion is confirmed by Elkins' Estate, 325 Pa. 373. It was there held that no review of an adjudication could be had after five years, even at the instance of a minor who was not represented at the audit. If the minor was not bound by the adjudication, he could raise the same question upon another account, and would not need first to set aside the prior adjudication. Indeed the whole practice of petitions for review is a recognition of the conclusiveness of an adjudication upon parties who had no actual notice.

To this there is the exception created by section 46(*c*) of the Fiduciaries Act, which requires actual notice to creditors, legatees, next of kin, and others who have given written notice to the executor. See also our Rule 2(*G*) (O. C. Phila. County). This section was new in 1917.

We ought to be solicitous to see that there is someone to speak for minors and unborn persons. Unless there is, the confirmation of the account purports to give them something which it does not do. The order "account confirmed" seems to mean that the judge has gone over the account and looked at the vouchers and approved the expenditures. No doubt the layman thinks that is the meaning. In fact, it means nothing of the kind, but only that no one has made any objection. Even if the judge did examine the account he has not the means for getting at the facts behind it, and generally speaking he ought not to initiate objections. I speak freely because I was the auditing judge of 1924 in this matter.

[After determining the amount of the surcharge the adjudication proceeded.]

The next question is, how should the surcharges be handled? The rights of the possible unborn grandchildren are unreal. Though such a possibility may make a real estate title unmarketable, or may make a contingency too remote, yet distribution of personal estate ignoring such a possibility has often been made upon the distributee's own bond. In this case the situation may be met, and the corporate fiduciary and the estate of the deceased individual fiduciary may be released, upon the giving of a bond to be filed in this court by each of the three living children (who have got the benefit of the income) to protect the interests of her own afterborn children. I assume they will be willing to give this, as they have already indemnified the trustees. It should be a general indemnity bond in the amount of $10,000, reciting the above items of possible surcharge, to be approved by the court.

The rights of the three minor grandchildren are real, though they may never be asserted. I do not see how I can condone what are really breaches of trust, no matter how much the adult members of the family may want it. It was suggested that the question of surcharge could be

deferred until the minors came of age. But the estate of Warner J. Steel wants a discharge. The parties are entitled to recover from him, not his indemnitors. The five objectionable items which are still on hand ought to be sold. When the loss is fixed, the sum can be dealt with as in the award below. . . .

The amount so surcharged is awarded to the Fidelity-Philadelphia Trust Company as surviving trustee under the will of Henry M. Steel, to be kept in a separate fund and to be invested under the terms of the will, the income to be paid to those who pay the surcharges, and the principal to await the coming of age of all the minor grandchildren now in being.