Ringer, Admrx., *v.* Finfrock, Appellant.

Argued November 25, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Edwin D. Strite,* with him *James A. Strite,* for appellant.

*Edmund C. Wingerd,* with him *N. F. Keller* and *Daniel W. Long,* for appellee.

OPINION BY MR. JUSTICE DREW, January 6, 1941:

On May 27, 1938, the original plaintiff, Millie B. Ringer, as administratrix of the estate of Edward P. Henneberger, filed a bill in equity against Ivan R. Finfrock to obtain an accounting for bonds removed by him from the safety deposit box of the decedent, and for the proceeds of the bonds and coupons. During the pendency of the suit, Millie B. Ringer died, and Ross S. Gordon, administrator d. b. n., was substituted as plaintiff. Defendant's preliminary objections to the bill were dismissed, whereupon he filed his answer, admitting the removal of a number of bonds from the decedent's box, but alleging that he had acted in accordance with the

decedent's instructions and that the bonds had been delivered to him. Testimony was heard by the chancellor and a decree nisi was entered ordering defendant to account to plaintiff, and to turn over to him all bonds and coupons which had been the property of the decedent, or the proceeds thereof. From the final decree of the court en banc dismissing his exceptions, defendant has taken this appeal.

Edward P. Henneberger, a resident of Antrim Township, Franklin County, died on August 8, 1932, unmarried. For ten years the appellant, Finfrock, and his wife, a niece of the decedent, had resided at his home. Evidence was introduced at the trial to show that the decedent, who was seventy-seven years of age at the time of his death, had been in ill health, and that from December, 1931, his mental and physical conditions were further weakened by pneumonia and pulmonary tuberculosis. He imposed great confidence in appellant and his wife who took care of his home and acted for him in numerous business transactions.

On December 20, 1931, the decedent executed a power of attorney, authorizing appellant and his wife to draw upon his checking account at the bank and to open his safety deposit box. Upon this authority, while decedent was confined to his bed, appellant removed from the box all of his bearer bonds, estimated at from $6,000 to $9,000 in value, including Liberty Loan bonds, bonds of the Borough of Greencastle, farm loan bonds and others of unspecified issues and denominations. Appellant testified that he delivered these to the decedent, who directed him to detach certain coupons, and, in his presence, made a gift of the bonds to Mrs. Finfrock. According to his testimony, she placed them in a cedar chest in the decedent's house, although she kept other valuables in appellant's safety deposit box at the bank where he was employed. Some of the proceeds were deposited in bank accounts owned by appellant and his wife as tenants by the entireties, and some were used to purchase a summer cottage to which they took title

jointly. Mrs. Finfrock died in November, 1935. Appellant admitted disposing of some Liberty Bonds after her death, but he asserted that these were his individual property although he was unable to remember where or how he acquired them. He also deposited in his savings fund the proceeds of certain farm loan bonds which he alleged were given by his wife to their son.

The administration of the estate of Edward P. Henneberger was impeded by a contest arising from the attempt of appellant and his wife to have probated an alleged will of Henneberger, in which they were named coexecutors, and all of his property was devised and bequeathed to Mrs. Finfrock. Upon a feigned issue, certified to the court of common pleas, a jury found that the will was procured by undue influence on the part of this appellant. On April 11, 1936, his motions for a new trial and judgment n. o. v. were overruled, and final judgment was entered for the opponents of the will on January 25, 1938. Four months thereafter, the present bill was filed.

The chancellor's finding that appellant stood in a relation of trust and confidence to the decedent at the time he removed the bonds from the latter's safety deposit box, deprives of merit appellant's challenge to the jurisdiction of the court below in equity. Ordinarily, the mere relation of principal and agent is not sufficient to justify a decree for an accounting. "But where the principal has reposed confidence in his agent, and the matters for which an accounting is sought are peculiarly within the knowledge of the latter, equity will assume jurisdiction": *Williams v. Finlaw, Mueller & Co.*, 292 Pa. 244, 249. Here, appellant alone possesses knowledge of the securities for which he has been asked to account, and it is abundantly clear that he enjoyed the complete confidence of the decedent.

The existence of this confidential relation was purely a question of fact. Such a relation is not restricted to any particular personal association. It may exist as a matter of law in certain recognized fiduciary re-

lations, as in the case of trustee and cestui que trust, attorney and client, and guardian and ward. It may also exist as a matter of fact wherever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on the one side, or weakness, dependence or justifiable trust, on the other. See *McCown v. Fraser*, 327 Pa. 561, 564-565; *Null's Estate*, 302 Pa. 64, 68; *Leedom v. Palmer*, 274 Pa. 22, 25; Restatement, Trusts, section 2 (b).

The record amply supports the chancellor's finding. The decedent was an aged man, suffering from severe illness and almost entirely confined to his home. The weakness of his mental condition was established by competent evidence. Appellant was his confidante in domestic and business affairs. He was sufficiently in control of the decedent's home to deny entrance to one of the latter's nephews. He and his wife paid the household bills. In addition to conducting several of the decedent's business transactions, appellant had unlimited authority to draw upon his checking account, and free access to his securities. The bonds were taken by appellant through the use of this power of attorney. In this, and many other respects, therefore, the present case differs from *Pyewell's Estate*, 334 Pa. 154. It is clear that here appellant had the confidence of the decedent, with the power and means to take advantage of, or exercise undue influence over him.

Since appellant admittedly took possession of the securities of the decedent, and did so while he stood in a confidential relation to him, the burden of proof rested upon him to explain his disposition of them: *Weaver v. Welsh*, 325 Pa. 571. This he attempted to do by his own uncorroborated testimony that he delivered them to the decedent, who subsequently gave them to appellant's wife. He was a competent witness for the purpose of showing his conduct with respect to the bonds, but the weight and credibility of his testimony was for

the chancellor: *Weaver v. Welsh,* supra, at 580. It was found to be incredible and insufficient to sustain the burden resting upon him.

In testifying, appellant was evasive and inconsistent. By his wary reluctance to answer questions specifically, by his contradictions, and by his apparent lack of candor, he impressed the court as a thoroughly unreliable witness. The chancellor said of him and his testimony: "He was a most unsatisfactory witness and impressed us as attempting to evade answers to all such questions as he thought might be injurious to his case. Seldom have we heard a witness and read a record of testimony in which there seemed to be as palpable effort to forget circumstances unfavorable to the witness as in this case, and in addition as evasive in his answers to a great many questions asked him on cross-examination. No court could find that the defendant had met a burden resting on him with the only evidence that of himself given in such a manner as herein. It was so unsatisfactory both in its matter as well as in the manner in which it was given as to leave us without confidence in it."

Although he testified positively to the words spoken by the decedent in giving the bonds to his wife, appellant was unable to recall the circumstances under which he was instructed to procure them from the safety deposit box. Despite his familiarity with securities as the employee of a banking institution, he professed not to know the number, value, issue, or denomination of any of the missing bonds from which he had, on several occasions, clipped coupons. In one instance he testified that all of the issues involved had been called before the death of his wife, in another, that he hunted for them in her cedar chest after she died. He denied any knowledge of the farm loan bonds until he was compelled to admit that he had deposited the proceeds of these securities in his savings account. These and other discrepancies, together with the suspicious circumstances surrounding his acquisition of the bonds and

their ultimate disposition, justified the court below in disregarding his testimony. As he was the only living witness to the transactions he described, the fact that his statements were uncontradicted is of no significance: *Burke v. Kennedy,* 286 Pa. 344, 347.

This Court will not disturb the chancellor's finding of fact that appellant has not satisfactorily accounted for the bonds and their proceeds. The record discloses that his disbelief of appellant's testimony was not capricious. "The rule is clear that where the chancellor's findings are affirmed by the court in banc we are concluded thereby, where such findings were supported by proof sufficient to require their submission to the jury in a trial at law": *Belmont Lab., Inc., v. Heist,* 300 Pa. 542, 546; see *Markovitz v. Markovitz Bros., Inc.,* 336 Pa. 129, 136; *Patterson's Estate,* 333 Pa. 92, 93; *Fidelity T. & T. Co. v. Garrett,* 327 Pa. 305; *McCown v. Fraser,* and *Weaver v. Welsh,* both supra.

The question of laches is disposed of by the conclusion of the court below that appellant has not been prejudiced by the delay in instituting these proceedings, and that the bill was filed with reasonable promptness after the determination of the will contest which interfered with the orderly administration of the decedent's estate. Appellant's assignments of error relating to the admission of testimony have not been pressed in argument before this Court, and are overruled.

Although the decree of the court below orders appellant to turn over to appellee any bonds, coupons, or the proceeds thereof, belonging to the estate, as well as to account for the same, it is not improper. It defines the subject matter of the accounting, but leaves open the precise liability of appellant, which will be determined by the court below upon the basis of its examination of his account. See *Robinson v. Fulton,* 262 Pa. 265, 267.

The decree of the court below is affirmed at appellant's cost.