Ringer et al., Appellants, *v.* Finfrock.

Argued January 28, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Edmund C. Wingerd,* with him *Daniel W. Long,* for appellants.

*Edwin D. Strite,* with him *James A. Strite,* for appellee.

OPINION BY MR. JUSTICE DREW, March 24, 1941:

This appeal arises out of another phase of the litigation involving the relation between defendant, Ivan R. Finfrock, and one Edward P. Henneberger, now deceased, during the latter's lifetime. In *Ringer, Admrx., v. Finfrock,* 340 Pa. 458, we affirmed the ruling of the court below that defendant, because in a confidential relation to Henneberger, must account to his estate for bonds which he removed from a safe deposit box pursuant to authority given him by the decedent. By the present bill in equity, plaintiffs, here the heirs at law of Henneberger, seek to compel defendant to convey to them an undivided one-half interest in a tract of 111 acres of land in Antrim Township, Franklin County. Defendant's preliminary objections to the bill were overruled and he filed an answer. Testimony was heard by a Chancellor who made certain findings of fact and conclusions of law and entered a decree nisi dismissing the bill at the cost of plaintiffs. Exceptions thereto were overruled by the court en banc and from the final decree so entered plaintiffs took the present appeal.

In 1928 Henneberger and his sister, Margaret Rebecca Henneberger, each were the respective owners of undivided one-half interests in the premises in question. The sister died in that year leaving a will since duly probated wherein she named the brother as executor and empowered him to sell real estate. Pursuant to this authority, Henneberger, who had qualified as executor, advertised the one-half interest under his sister's will for public sale. On August 22, 1931, he sold the same to defendant at a bid of $2700, executing a deed therefor on February 29, 1932, which was recorded on May 10, 1932. While still seized of his own undivided one-half interest in the premises, Henneberger died on August

8, 1932, leaving an alleged will wherein he devised his entire estate to his niece, Edith Greenawalt Finfrock, who, with defendant, her husband, had resided on the farm with him for many years. After protracted litigation, this will was set aside as procured by undue influence on the part of defendant and his wife. Plaintiffs, as heirs at law of decedent, thereafter filed their bill in the present case to compel conveyance to them of the half interest in question, alleging that defendant stood in a confidential relation to Henneberger and had purchased this interest at the executor's sale for Henneberger himself, having previously agreed to do so.

The learned Chancellor in his findings of fact concluded that defendant was not acting as agent of Henneberger in purchasing the property, that there was no agreement by defendant to reconvey the same, that the conveyance was made for a good and valuable consideration and that there was no confidential relationship between Henneberger and defendant on August 22, 1931, the date of the sale. Plaintiffs now challenge these findings, contending that there was a confidential relationship arising either from an agency status or from the general circumstances of the parties and therefore the burden of showing the bona fides of the transaction was on the defendant and had not been sustained. We agree with the court below that there is no merit in these arguments.

Henneberger, seventy-seven years of age at the time of his death, had, prior to December, 1931, transacted most of his own limited business affairs. One of plaintiffs' own witnesses testified that until that time he went to his bank and transacted business like any other customer. Physically somewhat weakened because of advanced age, the record shows no evidence of the impairment of his mental powers. There was some testimony that defendant had previously handled a few minor business matters for him, such as the collection of one or two notes. But the Chancellor, after consid-

ering the facts, in a very full and fair manner, properly held that the evidence was wholly insufficient to justify a finding that there was a confidential relationship at the time of the sale. Our own examination has led us to the same conclusion. "Where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily known as confidential in law, the evidence to sustain such relation must be certain; it cannot arise from suspicion or from infrequent or unrelated acts": *Null's Estate*, 302 Pa. 64, 69.

In December, 1931, however, the decedent suffered an attack of pneumonia, was confined for a time in the hospital, and was ill until the time of his death; during this period he relied upon defendant to take care of his affairs, giving him a power of attorney to draw upon his checking account and to open his safe deposit box. It was the relationship between the parties after giving the power of attorney which caused the setting aside of his will which had been executed only two days before his death. It was this *subsequent* relationship which was held to be confidential, and was the basis of the decree against defendant to account for bonds taken from the safe deposit box, which we affirmed in *Ringer, Admrx., v. Finfrock,* supra. The instant record shows a complete change after December, 1931, in the situation and relationship of the parties. Obviously, this subsequent relationship could not prove a confidential status previously: *Leedom v. Palmer,* 274 Pa. 22; *Pyewell's Estate,* 334 Pa. 154. The fact that the deed which plaintiffs now seek to overthrow was not executed until February 29, 1932, when there may have been a confidential relationship (although there was no finding as to this fact) does not alter the case. As the Chancellor aptly pointed out: "If Ivan R. Finfrock bought this real estate for himself, then the making of the deed to him by the executor was but performing a duty which the law would have required him to perform. It was the trust created and existing at the time

of the sale not at the making of the deed which must be considered in deciding this case."

The evidence, which plaintiffs offered to meet the heavy burden resting on them to set aside the deed executed by Henneberger and for consideration money for which he took credit in his executor's account, is not convincing. Their witness Walter Minnich, son-in-law of one of the plaintiffs, Ross S. Gordon, and cashier of the bank at which defendant was employed, testified that on the day of the sale, defendant requested some time off so that he could attend, as "Uncle Ed wanted him to buy it for him, he was afraid if he would bid somebody would bid it up on him." Naomi Minnich, Gordon's daughter, testified that after the sale, defendant told her that he had "bought Aunt Beckie's half for Uncle Eddy." Gordon testified that Henneberger had asked him to bid but that he had declined because he was too busy and suggested defendant in his place. The learned Chancellor found that the testimony of Gordon "is not clear and . . . considering his interest in the outcome and his activity in all these matters it is not very persuasive." On the other hand, defendant denied that he had made these statements to the Minnichs and his contention that he bought the premises for himself individually is corroborated by testimony of several disinterested witnesses that Henneberger had subsequently made statements recognizing defendant's half interest. Henneberger never attempted to repudiate the sale in his lifetime and charged himself with the full amount of the $2700 purchase price when he filed his first and final account as executor of the estate of his sister. No evidence was introduced to contradict the recital in the deed acknowledging receipt of the full consideration. In this state of the record, it was the province of the Chancellor to resolve the conflicting issues of fact and where his findings are affirmed by the court en banc, we are concluded thereby, where such findings were supported by proof sufficient to require their submission

to the jury in a trial at law: *Ringer, Admrx., v. Finfrock,* supra, and cases there cited.

Plaintiffs' remaining assignments of error relate to rulings on the admissibility of evidence. They are immaterial since they could in no way affect our conclusion, and are therefore dismissed. Considered in the light most favorable to plaintiffs, if there were any technical error in the rejection of any of plaintiffs' offers, which we do not concede, the error was harmless and of no prejudice whatever. A perusal of the entire record convinces us that the trial was conducted in an able and fair manner. The findings of the learned Chancellor are fully supported by the evidence. Particular weight should be given his conclusions in this case since, as stated in his discussion, he has given little credence to the testimony of defendant himself, having found him in other cases arising out of the Henneberger estate a most unsatisfactory witness.

The decree is affirmed.