Leuschen, Appellant, et al. *v.* Cook et al.

Argued April 15, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*P. V. Gifford,* with him *R. J. Firman,* for appellants.

*John B. Brooks,* of *Brooks, Curtze & Silan,* for appellees.

OPINION BY RHODES, J., July 18, 1941:

This is an appeal from the decree of the court below dismissing a bill in equity. Plaintiffs sought to impose a trust on two certain mortgages and the proceeds arising therefrom received by defendants. Upon dismissal of the bill one of the plaintiffs, Florence E. Leuschen, appealed from the final decree.

Henry R. Adams, a resident of Harbor Creek Township, Erie County, was the owner of a farm of approximately thirty acres in that township. He died intestate on April 26, 1918, leaving as his only heirs five daughters: Florence E. Leuschen and Ruby R. Gross, plaintiffs in these proceedings, Nora B. Cook and Anna M. Abell, the defendants, and Berdina Allen, who was not made a party. In March, 1930, a real estate agent by the name of Bunting prepared a plan for the sale of all the property of deceased and for the distribution of the proceeds, so that each of the five sisters would receive $2,100, or its equivalent, after the deduction of expenses. In August, 1930, the five sisters joined in the execution of several articles of agreement for the sale of the several parcels of land to various purchasers. One of the agreements provided for the sale of one parcel to George W. Coover and wife for $6,500. The Coovers accepted their deed, paid $2,000 in cash, and executed a mortgage to defendants in the sum of $4,500. From the $2,000 thus received Mrs. Abell paid $717.17 to each of the plaintiffs. The balance of the $2,000 was used to pay commissions to the real estate agent, and other expenses arising from the proposed sales. Another deed was prepared and executed by all the parties, and delivered to Berdina Allen. This deed conveyed 4 acres of the Adams farm, valued at $1,600. Having accepted this land as a part of her interest, Mrs. Allen was to receive $300 from defendants as the Coovers paid off the principal of their mortgage, and $200 from Mrs. Gross from the proceeds of a mortgage to be given to her by Edward T. Lee on one of the other parcels of

land. Mrs. Allen subsequently sold the property conveyed to her. The deed to Coovers and the deed to Mrs. Allen were executed by the five sisters and their husbands at the same time as a deed to William A. Jageman and a deed to Edward T. Lee. These four conveyances, dated October 3, 1930, and executed subsequently to the several articles of agreement, were intended to dispose of the entire Adams farm, as set forth in the Bunting plan. The purchase price for each of the tracts to be conveyed to Jageman and Lee was to be $1,500; the plaintiffs were to receive the remainder of their respective shares from the proceeds of these sales, part of the purchase price to be paid in cash and the balance to be secured by mortgages executed by Jageman and Lee to Mrs. Leuschen and Mrs. Gross, respectively. Mrs. Gross was to receive a $1,000 mortgage and $500 cash from the Lee transaction (less $200 to be paid to Mrs. Allen from the mortgage), and Mrs. Leuschen was to receive a $750 mortgage and $550 cash from the Jageman transaction. Payments of $800 each to Mrs. Gross and Mrs. Leuschen and the estimated expenses of $600 were to exhaust the cash to be received.

In December, 1930, plaintiffs had knowledge that both Jageman and Lee had defaulted, and that these sales would not be consummated. The deeds which had been prepared and executed were never delivered, and these two tracts remained unsold.

On December 18, 1936, the Coovers conveyed part of their land to William R. Post and wife, whereupon defendants satisfied the original Coover mortgage, and accepted in lieu thereof a mortgage in the amount of $3,450 upon the land conveyed to the Posts. The Post mortgage was made to defendants; and all interest payments and payments of principal on the Coover and Post mortgages have been made to defendants.

Plaintiffs, on May 23, 1939, filed their bill in equity which contained the prayer that defendants be declared

trustees for all the heirs of Henry R. Adams, deceased, with respect to the Coover and Post mortgages and the payments of principal and interest thereon.

After hearing, the chancellor found, and his findings were approved by the court in banc and supported by the evidence (*Ringer, Adm'x, v. Finfrock*, 340 Pa. 458, 464, 17 A. 2d 348), that the five sisters met and saw the plan and schedule of distribution prepared and submitted by Bunting,[1] and in pursuance thereof executed the several articles of agreement and the deeds to the Coovers, Mrs. Allen, Jageman, and Lee; that in November or December, 1930, plaintiffs and defendants had knowledge that both Jageman and Lee had defaulted, and that those sales would not be consummated; that in 1934 appellant authorized a real estate agent to sell the lots originally intended to be conveyed to Jageman and Lee for $3,000; that in 1935 appellant leased a part of the unsold lots and applied the rental upon the taxes; that in 1932 appellant rejected an offer of $2,300 for the unsold lots, and asked the prospective purchaser $3,000. There was testimony that appellant stated that the unsold land was owned by her and Mrs.

---

[1] The Bunting plan and schedule, made the subject of the chancellor's fourth and twentieth findings of fact, may be summarized as follows: The Adams farm was divided into four parcels, and the prices for which they were to be sold were fixed as follows: Ten acres with buildings thereon, $6,500—$2,000 in cash, $4,500 mortgage. This was to be purchased by George W. Coover and wife. Four acres, $1,600 to be conveyed to Berdina Allen as a part of her one-fifth interest; 6.37 acres, $1,500 to be conveyed to William A. Jageman—$750 in cash, $750 mortgage; 6.37 acres, $1,500 to be conveyed to Edward T. Lee—$500 in cash, $1,000 mortgage. The total amount to be received was $11,100. The selling commission and expenses were estimated at $600, leaving $10,500 for distribution among the five heirs, or $2,100 to be paid to each.

In addition to the 4 acres of land valued at $1,600, Mrs. Allen

Gross, that she had authority to speak for Mrs. Gross, and that the deed was not in their names "because she didn't want to bother with it twice," as she intended to sell it.

In their bill in equity plaintiffs have averred that the two unsold parcels together are not worth more than $1,500, and that at the time of filing the bill there was no market for them at that price. At the hearing on November 9, 1939, there was testimony that the market value of the two unsold parcels was much less then than in 1930 or in 1932.

It is argued by counsel for appellant that defendants in reality were trustees for the benefit of all the heirs, and that their actions created a constructive trust by which they should be required to account to the other sisters for the proceeds of the mortgages taken in their names. It was further argued that the moving consideration for the signing of the deeds by plaintiffs was the actual sale of all the Adams property; that, in as much as two of the proposed sales did not go through, the original plan as to division of proceeds failed; and that defendants should therefore be required as trustees to make a proper accounting to the other sisters. We are unable to agree with appellant's argument.

No constructive trust arises from the facts found. Ex-

---

was to receive $500 in cash, $300 to be paid by Mrs. Cook and Mrs. Abell from the proceeds of the Coover mortgage, and $200 to be paid by Mrs. Gross from the proceeds of the Lee mortgage. Mrs. Cook and Mrs. Abell were to receive the Coover mortgage in the amount of $4,500 in payment of their interests, and out of the same pay Mrs. Allen $300 as the Coovers paid them. Mrs. Gross was to receive the $1,000 Lee mortgage, and out of the proceeds pay Mrs. Allen $200, and $500 in cash. She was also to receive $800 in cash from proceeds of the sale to Coovers. Mrs. Leuschen was to receive $800 in cash from the proceeds of the sale to Coovers, the Jageman mortgage in the amount of $750, and $550 in cash from the proceeds of the Jageman sale.

cept for the $200 which was to be paid by Mrs. Gross from the Lee transaction, Mrs. Allen has received her distributive share, and she has not been made a party to these proceedings. As a portion of her share she received one of the parcels of the Adams property in lieu of cash, and this land is no longer owned by her. As said in *Beatty v. Guggenheim Exploration Co. et al.,* 225 N. Y. 380, 122 N. E. 378, at page 380: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."

We are of opinion that morality, justice, conscience, and fair dealing do not demand that this relation be established in the present case. See *Peoples-Pittsburgh Trust Co. v. Saupp,* 320 Pa. 138, 143, 182 A. 376. Aside from the fact that when a party claims to hold another a trustee of personal property under a constructive trust, he must assert the claim within six years from the time when the trust is alleged to have originated (*Ashhurst's Appeal,* 60 Pa. 290, 316; *Evans' Appeal,* 81 Pa. 278, 301; *Shelley's Estate,* 287 Pa. 105, 113, 134 A. 468), plaintiffs agreed to the plan for the division and sale of their father's farm, acquiesced in the schedule of distribution of the proceeds, and acknowledge that portions of their distributive shares were to come from the parcels which Jageman and Lee had agreed to purchase. Each of the plaintiffs received $717.17, on account of their respective shares in accordance with the general plan, which was a division between them of the $2,000 paid by Coovers after the payment of expenses. They knew in 1930 that the Jageman and Lee transactions, the sources of the balance of their shares, would not be consummated. They knew at that time that defendants' distributive shares had been paid by the Coover mortgage. Defendants therefore acquired the

Coover mortgage in accordance with the arrangement or general plan, to which plaintiffs were parties, and not in violation of any trust or implied agreement with plaintiffs. There was no fraud or unfair dealing whereby defendants received the Coover mortgage, and subsequently the Post mortgage, for their distributive shares, but the acquisition was clearly in accordance with the intention of all the parties including plaintiffs. Besides these considerations, appellant's subsequent acts and declarations are incompatible with her present assertion that defendants took as trustees the mortgages, representing payment of their interests, under a constructive trust.

We are also in accord with the conclusion of the court below that plaintiffs' rights to the relief sought are barred by laches. See *Riley v. Boynton Coal Co. et al.*, 305 Pa. 364, 368, 157 A. 794; *Peabody v. Carr et al.*, 313 Pa. 325, 327, 169 A. 126. Plaintiffs had full knowledge of all the facts in 1930, but they did not file their bill in equity asking for relief until May, 1939. Equity will not grant relief after an unreasonable delay. *Wallace's Estate*, 299 Pa. 333, 340, 149 A. 473. In their bill they acknowledged, in effect, that the two unsold parcels were worth more in 1930 than they were at the time of filing the bill, and that there had been a material depreciation in value of these properties. There is testimony to the same effect. It is true that delay which injures no one does not furnish reason for refusing relief. *Schwartz et al. v. Gingerich et al.*, 141 Pa. Superior Ct. 298, 303, 14 A. 2d 623. But it cannot be said that, if the agreed plan of distribution is to be ignored, plaintiffs' delay would not result in injury to defendants or prejudice their interests. The status quo ante could not be restored. If it could be said that there was any merit in plaintiffs' position, it was their duty to take proper and timely steps to establish the claims which they asserted (*First National Bank of Pittston, Ex'r, et al.*

*v. Lytle Coal Co. et al.*, 332 Pa..394, 3 A. 2d 350), as they learned in December, 1930, that the parcels which were to be the source of the major portions of their shares in the division of their father's estate could not be sold as planned. It is the general rule that acquiescence is presumed from delay. *Ashhurst's Appeal*, supra, p. 315. Had plaintiffs acted with any diligence in making claim for a redistribution, defendants would have been entitled to their shares of these unsold parcels under conditions much more favorable than those existing in 1939. Moreover, Mrs. Allen is no longer the owner of the 4 acres which she acquired in the division. Plaintiffs remained inactive for more than eight years after they were fully acquainted with the facts, and until their affairs had become so complicated that a restoration to the former status would be difficult, if not impossible. See *Warnick v. Conroy et al.*, 318 Pa. 232, 235, 177 A. 757.

Between 1930 and 1939, when the bill in equity was filed, there was a material change in circumstances, and plaintiffs cannot, after inaction for so many years, successfully invoke the jurisdiction of equity for the purposes sought by them. See *Weightman v. Weightman et al.*, 342 Pa. 8, 20 A. 2d 215.

Decree is affirmed, at the cost of appellant.