760

## Dunn Estate

*John Evans,* for accountant.

*P. Raymond Bartholomew,* for exceptant.

ACKER, J., March 14, 1972—This matter has been before this court on two previous occasions. On June 1, 1971, an opinion and order was entered dismissing objections advanced by the estate to a petition for citation on the executor to file an account and directing that an account be filed within 30 days of that order. That account was, in fact, filed. On November 29, 1971, this court entered an opinion and order discharging a rule upon John M. Dunn, Executor of the Estate of J. Ralph Dunn, to show cause why an auditor should not be appointed. The court set a time and date to hear objections to the account of the estate without an auditor and to hold a pretrial conference. Counsel was directed to appear and orally or in writing set forth the basic issues which they believe to be presented by the objections, the lines of inquiry and testimony which they believe should or should not be permitted and the authorities in support of their respective positions.

A conference was held pursuant to the above-

mentioned order, at which time all 33 exceptions to the account were considered. It soon became apparent that many of the exceptions were filed because of a lack of understanding of Pennsylvania law by either Ruth K. Dunn, the exceptant, or her California conservator, Charles K. Gould. Therefore, many of the exceptions were dismissed, for they were untenable as a matter of law as more fully appears in an order of January 4, 1972. However, certain matters of considerable import remain to be determined. These matters concern themselves with the interest of decedent in Dunn Automotive Supply, the interest of Ruth K. Dunn in a one-half interest in commercial real estate located at 95 South Main Street, Sharon, Pa., an alleged failure of the executor to make payment to Ruth K. Dunn concerning her life interest in a one-half interest of real property at 2410 East State Street, Sharon, Pa., and a certain account in First Federal Savings and Loan Association.

## BURDEN OF PROOF

The parties are unable to agree as to the burden of proof in this case. There can be no doubt that the person attempting to prove an account incorrect must sustain the burden of establishing his position. As a logical extension thereof, those who seek to surcharge a fiduciary for breach of trust must bear the burden of proving the particulars of the fiduciary's wrongful conduct.[1]

Further, it has been held that settlement of an account of a decedent's estate may be presumed from circumstances suggesting a family settlement or from an agreement or by implication arising from long continued acquiescence.[2]

---

[1] Lohm Estate, 440 Pa. 268, 269 A. 2d 451 (1970); Maurice Estate, 433 Pa. 103, 249 A. 2d 334 (1969).

[2] Henry's Estate, 198 Pa. 382, 48 Atl. 274 (1901).

A claimant who is a partner in a firm which paid over moneys to a decedent's estate will not afterwards be heard to complain adversely to it. He must at least overcome the presumption arising from such an act.[3]

Schedule No. 4 of the account of the executor sets forth the manner of the evaluation of the interest of decedent in the business known as Dunn's Automotive Supply. The facts as set forth therein are, therefore, presumed to be correct and it will be the burden of the exceptant to establish the contrary; similarly, as to the commercial building at 95 South Main Street, Sharon, the life estate of Ruth K. Dunn in one-half interest in 2410 East State Street, Sharon, the life estate of Ruth K. Dunn in the 69 Buhl Boulevard property and the other controverted matters remaining.

*Is the exceptant barred by either time or her own conduct from contesting the administration of the estate as to Dunn Automotive Supply, 95 South Main Street, 2410 East State Street, and 69 Buhl Boulevard, in Sharon?*

Schedule No. 4 of the account recites that the value of decedent's interest in Dunn Automotive Supply business was based on "Statement of Partners Capital Account as of June 30, 1956," prepared by Elliot, Finucane & Quimby, Certified Public Accountants.

The date of death was June 25, 1956, so the value was determined five days thereafter. Payments were made, according to schedule No. 4, to Ruth K. Dunn of the income from the one-half value of the interest of decedent. The schedule further recites that Dunn Automotive Supply, a partnership, was incorporated January 2, 1959, and that the executor, pursuant to authorization in paragraph No. 5 of the will, converted

---

[3] Staib Estate, 11 Pa. Superior Ct. 447 (1899).

the interest in the business supporting Ruth K. Dunn's life estate and a note in the amount of $11,918.98, evidenced this obligation and pursuant thereto Ruth K. Dunn was paid semi-annually from 1959 through 1970 interest at the rate of seven percent upon the principal amount, being a total of 24 payments of $417.17 or a total of $10,012.08.

The executor's position is that the matter is ruled by Ellis v. Ellis, 415 Pa. 412, 203 A. 2d 547 (1964). Although the primary question for determination therein was whether the orphans' court or common pleas court had jurisdiction of the determination of a partnership interest, by use of the Act of March 26, 1915, P. L. 18, part VI, sec. 42, 59 PS § 104, it was held that when a partner dies and the business is continued without any settlement of accounts as between his estate and the partnership, he or his legal representative may have the value of his interest determined at the time of dissolution or, at his option or the option of his representative, in lieu thereof the profits attributable to the use of his right in the property. Further, using Ellis, the executor in the case at bar contends that since the estate of a deceased partner has no right in specific partnership assets, the subject matter of a sale of partnership assets in a proceeding for dissolution and winding up a partnership could not be denominated an asset of the estate. Therefore, there was no property over which the orphans' court had jurisdiction. It it claimed the estate had a right to determine the value of decedent's estate in the partnership at the time of dissolution. That is exactly what did happen and she has nothing to complain about, according to the executor.

Exceptant, however, answers that the partnership statute, above mentioned, gives an option to her to recover the profits if she desires that would have been

paid on her deceased husband's interest over these many years.[4]

However, the premise of the exceptant is that she has not had an account of her deceased husband's interest in the partnership business. This is required as a precondition for the application of the above-mentioned statute for it specifically states, ". . . without any settlement of accounts as between them or his estate. . . ."

In the case at bar, however, within five days of the death of decedent, certified public accountants did determine the value of decedent's interest in the estate and she accepted compensation continually from the first payment of July 1, 1956, being one day after that determination, through 1970 without apparent objection. If, in fact, there was no objection by exceptant, she will be entitled to no more than the properly determined interest of her husband in the estate and not the profits. We deem the accountants' determination of the matter as sufficient to prevent the application of the alternate remedy of profits attributable to the use of decedent's interest in the partnership.

There is, however, the further consideration of a 13½ year delay in raising objection to the procedure followed concerning the business. We believe that if such a delay did, in fact, occur, as contended by the executor, exceptant is barred from relief to now require an accounting over and above that contained in the account as previously filed.[5]

---

[4] Spivak v. Bronstein, 367 Pa. 70, 79 A. 2d 205 (1951). In this case the widow of the surviving partner was bound because of a specific agreement that she entered into to accept $40 per week from the business, but a minor son for whom there was no legal guardian during the same period was not bound by his mother's conduct even though she professed to represent him.

[5] MacFarlane's Estate, 317 Pa. 377, 177 Atl. 12 (1935); Wilbur's Estate, 334 Pa. 45, 5 A. 2d 325 (1939).

Finally, this matter may be considered as a family settlement. Such settlements are looked upon with favor and upheld by our courts whenever possible.[6]

It is not necessary to the conclusiveness of the distribution actually made in a family settlement that there be a formal written agreement among the parties relative to it.[7]

A family settlement may be presumed by the failure to account, acquiesced in over a long period of time.[8]

It is the general rule that acquiescence is presumed from delay.[9]

Edelman's Estate, supra, well sets forth the applicable rules to control this case.

Applying the principles of the Edelman's Estate to the instant case, although there is no evidence now before this court that there was a meeting of the heirs, it is apparent that exceptant knew or must have known of the manner of the handling of the estate, not only as to the business but the commercial properties as well. If the facts are as alleged by the executor, she should in equity and conscience be barred by her failure to inform the executor of her dissatisfaction before this late date. Exceptant will, however, be given the opportunity to disprove these allegations.

With the principles as set forth as a guide to the parties, a time and date will be set in the subsequent order upon this matter.

---

[6] Walworth v. Abel, 52 Pa. 370 (1866); Appeal of Wilen, 105 Pa. 121 (1884); Palethorp's Estate, 168 Pa. 98 (1895); McCutcheon's Estate, 283 Pa. 157, 128 Atl. 843 (1925); Iacovino v. Caterino, 332 Pa. 556, 2 A. 2d 828 (1938).

[7] Follmer's Appeal, 37 Pa. 121 (1860); Edelman's Estate, 336 Pa. 4, 6 A. 2d 511 (1939).

[8] Cannon's Estate, 330 Pa. 513, 515, 199 A. 2d 135 (1938); Edelman's Estate, supra; Plummer Estate, 349 Pa. 453, 36 A. 2d 814 (1944); Hammer's Estate, supra.

[9] Ashhurst's Appeal, 60 Pa. 290 (1869); Leuschen v. Cook, 145 Pa. Superior Ct. 568, 21 A. 2d 496 (1941).

## ORDER

And now, March 14, 1972, the sixth day of April, 1972, at 1:30 p.m., Courtroom No. 2, Mercer County Courthouse, Mercer, Pa., is the time and place set for receiving evidence on exceptant's objections 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 and 33. The burden of proof shall be upon exceptant concerning all of the paragraphs above-mentioned.